THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LOUIS
SCIASCIA, Appellant.

Second Department, May 31, 1944.

*Joseph F. Carlino* and *Frank D. Paulo* for appellant.

*Farrell M.·Kane, District Attorney,* and *John F. Kavanagh*
for respondent.

MEMORANDUM BY THE COURT. The defendant's guilt of these crimes was overwhelmingly established. The disagreement of the jury on the grand larceny count had no vitiating effect. Adopting the view that each count in the indictment is to be regarded as if it was a separate indictment, consistency in the verdict is not necessary under *Dunn* v. *United States* (284 U. S. 390, 393, per HOLMES, J.). This principle is almost universally followed by our sister States. (See cases collated in 80 A. L. R. 171, *et seq.* and A. L. R. Supplemental Decisions.) Moreover, that question was not saved for review; and there being no exception to the charge, it thereby became the law of the case. (Code Crim. Pro., §§ 419, 443-a, 455; *People* v. *Pavlisak*, 292 N. Y. 504; *People of the State of New York* v. *Bragle*, 88 N. Y. 585, 591; *People* v. *Wiechers*, 179 N. Y. 459, 461–464.)

Judgment affirmed.

JOHNSTON, J. (dissenting). I dissent from the decision about to be made. Before giving my reasons a brief statement of the facts is necessary. One Bernard Seligman conducted a summer amusement business at South Beach, Richmond County, and in conjunction therewith operated a hotel, together with a bar and restaurant. About 12:45 on the morning of July 20, 1942, two men entered the bar room, and after ordering drinks one of them, exhibiting a gun, approached Seligman and said: " This is a stickup," and the other took $649 from Seligman's pocket. Both men then left the barroom and as they reached the basket pavilion they encountered Seligman's wife, Anna, who attempted to restrain them. The man with the gun threatened her and pushed her backwards over a table. They then boarded a parked automobile and made their escape. Several hours thereafter defendant was arrested. Whether the other man ever was apprehended and whether there was a third man in the automobile does not appear. Subsequently the defendant and two others — the latter under fictitious names — were indicted.

The indictment contained five counts. The first charged robbery in the first degree; the second charged grand larceny in the first degree; the third and fourth charged attempted assault in the first degree committed on Bernard and Anna Seligman, respectively; and the fifth, as amended, charged a violation of section 1944 of the Penal Law, to wit, committing a crime while armed and using an automobile in the commission of a crime.

The robbery count alleged that defendant and two others, acting in concert, entered Seligman's premises and took $649 from him by means of force and violence and fear of immediate injury to his person, and that at the time defendants were armed and were aided by the use of an automobile. The larceny count alleged that at the same time and place the defendants took the same money from Seligman's person with intent to appropriate it to their own use.

It is conceded that the crimes set forth in the first and second counts grew out of and relate to the same transaction or state of facts and that the same evidence was offered to prove each offense. The defense was an alibi. Seligman and his wife, when asked if they could identify defendant as one of the robbers, equivocated; nevertheless, defendant's guilt was palpable and convincingly proved.

When the jury returned its verdict, the foreman announced that defendant was guilty of the crimes charged in the first, third, fourth and fifth counts; and as to the second count, that the defendant was guilty of grand larceny in the second degree. When the clerk repeated the verdict as announced by the foreman, one juror indicated that was not the true verdict. The jury was then polled on each count separately. Each juror stated that he found the defendant guilty of the crimes charged in the first, third, fourth and fifth counts, and the verdict was so recorded. When the jury was polled on the second count, three jurors stated they did and nine jurors stated they did not find defendant guilty of grand larceny in the second degree. Thereupon the court, instead of directing the jury to retire for further deliberation, stated: "The Court rules that the defendant is not guilty, that there is a disagreement as to the 2nd count, grand larceny." When the clerk finally asked the jurors to "hearken to your verdict as it stands recorded," he stated: "You disagree upon the grand larceny charge" and the verdict is so recorded on the clerk's minutes. Defendant was sentenced to State prison for a term of not less than fifteen nor more than thirty years on the robbery count, and for an additional term of not less than five nor more than ten years for using an automobile in the commission of the crime, and sentence was suspended on the remaining counts.

In view of the trial court's direction that the defendant was not guilty on the grand larceny count, the majority of this court treats the verdict on that count as an acquittal, and I will do likewise.

Obviously the verdict finding the defendant guilty of robbery is inconsistent with the verdict (directed by the court) finding the defendant not guilty of larceny. " The distinction between robbery and larceny consists in this: In the latter, the act ' is accomplished secretly, or by surprise or fraud, while in the former the felonious taking must be accompanied by circumstances of violence, threats, or terror to the person despoiled.' " (*Mahoney* v. *People of the State of N. Y.*, 3 Hun 202.) Robbery has been defined by the common law writers as a species of aggravated larceny. (4 Blackstone Comm. 242; 2 East P. C. 707.) While there may be larceny without robbery, there can be no robbery without larceny. . (*People* v. *Kennedy*, 57 Hun 532.) Larceny is a necessary ingredient of robbery. (Penal Law, § 2120.) Since an essential element of robbery is theft, and as the verdict of not guilty on the second count was a finding that there was no theft, the verdicts on the first and second counts are conflicting, repugnant and irreconcilable.

If the finding — that there was no theft — implicit in the verdict of not guilty under the larceny count is accepted, the finding — that there was a theft — implicit in the verdict of guilty under the robbery count must be rejected. The defendant was either guilty or not guilty of stealing Seligman's money. He could not have been both. The verdicts cannot be supported in logic and should not be sustained in law. What was said by VAN BRUNT, P. J., in *People* v. *Massett* (7 N. Y. S. 839, not officially published), and quoted with approval in *People* v. *Munroe* (190 N. Y. 435, 438), is pertinent: " Juries should not be permitted to render verdicts which are so inconsistent the one with the other. A verdict of this kind is entitled to no consideration, and should be set aside at once, * * *."

It is a fundamental principle that a verdict in a criminal case must be consistent. (80 A. L. R. p. 171, and cases cited.) This court in *People* v. *Safe-Way Coal Co.* (242 App. Div. 659), and the third department in *People* v. *Haupt* (221 App. Div. 485), and the General Term (first department in *People* v. *Massett* (*supra*) have so held. Moreover, the Court of Appeals in *People* v. *Haupt* (247 N. Y. 369) ; *People* v. *Munroe* (*supra*) and *Harris* v. *People* (64 N. Y. 148, 154) has either expressly or impliedly so held. See, also, *People* v. *Holmes* (15 N. Y. S. 2d 438) ; *People* v. *Grzesczak* (77 Misc. 202) ; and *People* v. *Allen* (1 Park. Cr. 445). " A verdict which acquits accused of a crime which includes acts necessary to the commission of another crime for which he is found guilty is inconsistent." (23 C. J. S. § 1403, p. 1095; *People* v. *Kynette,* 15 Cal. 2d 731; *People* v. *Koehn,* 207

Cal. 605, 611; *People* v. *Andursky,* 75 Cal. App. 16; *Rosenthal* v. *United States,* 276 F. 714; *Davis* v. *State,* 43 Ga. App. 122; *Kuck* v. *State,* 149 Ga. 191; *Webb* v. *People,* 83 Colo. 1; *People* v. *Harrigan,* 218 Mich. 235; *Speiller* v. *United States,* 31 F. 2d 682; *John Hohenadel Brewing Co.* v. *United States,* 295 F. 489; *State* v. *Headrick,* 179 Mo. 300.) There are some cases in the Federal courts, as well as in other jurisdictions, notably *Crane* v. *People* (91 Colo. 21), which hold to the contrary, but they stem from *Dunn* v. *United States* (284 U. S. 390), upon which the majority relies.

In the *Dunn* case (*supra*) the defendant was indicted under the National Prohibition Act on three counts. The first charged the maintenance of a nuisance on July 4, 1930, by keeping for sale at the place designated '' five drinks of whiskey and one drink of beer.'' The second charged the unlawful possession of the same liquor, at the same time and place. The third charged the unlawful sale of the same liquor at the same place on June 26, 1930. Defendant was acquitted upon the second and third counts and convicted upon the first count. The evidence was identical for all the counts. On the trial defendant testified and his counsel stipulated that he owned the premises. Upon appeal it was urged that the verdict was inconsistent, since it negatived possession, which was an essential ingredient of the crime charged under the nuisance count. The Circuit Court of Appeals (Ninth Circuit) held otherwise, pointing out that while the evidence offered by defendant was calculated to raise a doubt as to whether or not he personally or through his agent made the sale, the verdict showed the jury was satisfied '' that the premises were kept and maintained and liquor was there possessed for purposes of illegal sale, and while they are not able to say beyond a reasonable doubt that the actual sale was made by an authorized agent of the appellant, they were convinced that the appellant kept the liquor there for the purpose of sale.'' (50 F. 2d 779.) Whether or not this reasoning is sound we need not now consider. Suffice to say that when the case reached the United States Supreme Court, Mr. Justice BUTLER, in a vigorous dissenting opinion, stated that the conflict between the findings may not be explained, and emphasized that by finding the defendant not guilty under the second and third counts, the jury conclusively established that the evidence was not sufficient to prove unlawful possession or sale, and since the first count charged nothing more than unlawful possession, this amounted to contradictory findings on the same fact. The United States Supreme Court, however, in affirming the judg-

ment, did not decide whether the verdict was consistent or inconsistent, but in the prevailing opinion of Mr. Justice HOLMES the statement is made that " Consistency in the verdict is not necessary." I quote from that opinion:

" Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. *Latham* v. *The Queen,* 5 Best & Smith 635, 642, 643. *Selvester* v. *United States,* 170 U. S. 262. If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as *res judicata* of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold."

I reject the suggestion that in stating " Consistency in the verdict is not necessary," the learned Justice intended to repudiate the fundamental principle supported by the weight of authority both in this country and England that the verdict in a criminal case must be consistent. The statement must be interpreted in the light of the facts of the case then before the court and the law applicable to that particular case. But if I have misinterpreted the holding in the *Dunn* case (284 U. S. 390, *supra*), this court is not required to follow it but is bound by the rule which the highest court of this State always has recognized and applied.

We may accept — perhaps we must — the other statement in the opinion of Mr. Justice HOLMES (p. 393) that " If separate indictments had been presented against the defendant [Dunn] for possession and for maintenance of a nuisance, and had been separately tried, * * * an acquittal on one could not be pleaded as *res judicata* of the other." But obviously the same would not hold true if separate indictments for robbery and larceny had been presented against the defendant in the case at bar and tried separately. The larceny being included in the robbery, an acquittal for the robbery would bar an indictment for the larceny and, likewise, an acquittal for the larceny would bar an indictment for the robbery. (1 Bishop on New Crim. Law [8th ed.] § 1055; 114 A. L. R. p. 1401, and cases cited; *The People* v. *M'Gowan,* 17 Wend. 386; *State* v. *Smith,* 43 Vt. 324; *State* v. *Pitts,* 57 Mo. 85; *Dowdy* v. *State,* 158 Tenn. 364, and *The State* v. *Mikesell,* 70 Iowa 176, 179.)

In the case last cited the defendant, who had been indicted for robbery, committed by taking money from a dwelling house, was convicted. He previously had been indicted for the larceny

of the same money and acquitted. In reversing the judgment the court held " That acquittal is a bar, not only to an indictment for the the larceny of the property, but for any other offense of which such larceny is an essential element."

In the case under review the court charged that the jury " may find this defendant guilty either of robbery or of larceny," and at the request of the District Attorney also charged that the jury. " may find the defendant guilty of *any* count in the indictment *or* guilty of all counts, *or* guilty as charged." (Italics inserted.) The majority holds that because the defendant did not except to the court's charge, he may not now be heard to urge that the verdict was inconsistent. Defendant did move to set aside the verdict on that ground. I recognize that in the absence of an exception the court's charge constitutes the law of the case. (*People* v. *Weiner,* 248 N. Y. 118, 121; *People* v. *Lewis,* 238 N. Y. 1, 5.) It is, however, ancient and well-settled law that a verdict which is inconsistent and " creates a repugnancy or absurdity in the conviction," is void and no judgment can be rendered upon it. (2 Bishop on New Crim. Pro. [2d ed.] § 1015-a; *Commonwealth* v. *Haskins,* 128 Mass. 60; see, also, opinion of Judge HOLMES, later Mr. Justice HOLMES, in *Commonwealth* v. *Lowrey,* 158 Mass. 18–20.) Incidentally, it should be noted that in *People* v. *Munroe* (190 N. Y. 435, *supra*) the judgment convicting the defendant of the crime of robbery in the first degree was reversed because, following an erroneous charge to which no exception was taken, it was entered on an inconsistent verdict, and this despite the fact that the Appellate Division held that " No injustice has been done, no substantial right [of the defendant] has been infringed." (119 App. Div. 704.)

The judgment convicting the defendant under the robbery count should be reversed.

CLOSE, P. J., HAGARTY, CARSWELL and LEWIS, JJ., concur in decision; JOHNSTON, J., dissents in part and votes for reversal of the judgment insofar as the count of robbery in the first degree is concerned, in opinion.

Judgment affirmed.