Thomas Bussell Jones, J.
The defendant renews a motion for a directed verdict of acquittal, pursuant to section 410 of the Code of Criminal Procedure, notwithstanding the verdict of a jury which found him guilty of the crime of assault in the third degree. This court is urged to acquit the defendant on the ground that the jury’s verdict, which found him guilty of assault in the third degree, was repugnant to its previously announced verdict, which found him not guilty of assault in the second degree and the lesser included crime of assault in the third degree. The defendant cites the case of People v. Bullís (30 A D 2d 470) in support of his claim that repugnant verdicts of guilty and not guilty of one identical act and crime require the trial court to direct his acquittal as a matter of law. The defendant also asserts that he became subject to double jeopardy (Code Grim. Pro., § 334, subd. 4) when the trial court reserved decision and failed to grant his motion for a directed verdict of acquittal which he made immediately after the jury had returned not guilty verdicts of assault in the second and third degrees under the fifth count of the indictment. He contends that the court should then, forthwith, have advised the jury to acquit him. (People v. Bennett, 49 N. Y. 137.) Instead, the court permitted the jury to continue its deliberations on the remaining crime of assault in the third degree under the sixth count of the indictment; for at that juncture, the defendant *900 contends, repugnancy was already apparent if the jury later brought in a guilty verdict. The prosecution, in a posttrial oral argument, cited the case of Dunn v. United States (284 U. S. 390, 393) and People v. Sciascia (268 App. Div. 14) in support of its contention that consistency in jury verdicts is not necessary.
Although having expressly reserved decision on the defendant’s motion for a .directed verdict of acquittal before .the jury returned its verdict of guilty of assault in the third degree against him, this court is apparently powerless to direct a verdict of acquittal after the jury has been discharged. The Code of Criminal Procedure alone establishes orders of criminal courts. Unless some justification can be found for a particular judgment or order, it does not exist. (Cf. People ex rel. Hirschberg v. Orange County Ct., 271 N. Y. 151.) Section 447 of the Code of Criminal Procedure imposes a limit in this regard, as it declares that: ‘ ‘ When there is a verdict of conviction, in which it appears to the court that the jury have mistaken the law, the court may explain the reason for that opinion, and direct the jury to reconsider their verdict; and if, after the reconsideration, they return the same verdict, it must be entered.” (Emphasis supplied.)
The guilty verdict is contrary to law. (Code Grim. Pro., § 465, subd. 6.) The jury verdicts of not guilty of assault in the second and third degrees exclude their later verdict of guilty of assault in the third degree, i.e., of the same crime. If the former were true, the latter, perforce, must be false. We are confronted with two incompatible verdicts which cannot coexist in logic or in law. Sua sponte and in the interests of justice, the verdict, by which the defendant was found guilty of assault in the third degree, is set aside and a new trial is ordered.
The prosecution presented its case against the defendant on a single theory, to wit: that defendant committed an assault upon Edward Davis, a police officer, on November 19, 1966, when he grabbed the policeman’s sleeve and drove his car away, and by dragging the officer alongside the moving vehicle, causing him to suffer bodily injury.
The charge of the court, made without exception or significant request to charge by either side (Code Grim. Pro., § 419) contemplated a single theory of the case. It thus became the law of the case. (People v. Pavlisak,, 292 N. Y. 504; People v. Sciascia, 268 App. Div. 14, 15, supra.) The charge spoke of and to a single set of facts (assault), comprising one episode.
The defendant was indicted and tried on two counts of assault (i.e., second and third degrees) upon a policeman, in the late *901 evening of November 19, 1966 on Harnett Street in Brooklyn. Police officer Davis drove his patrol car in front of the defendant’s parked automobile and blocked its path. At that moment the defendant was seated behind the wheel of his stationary vehicle with the motor running. He was talking with two companions. No disturbance or criminal activities had inspired the policeman to obstruct the defendant’s vehicle. The police officer left his patrol car and approached defendant’s automobile on the passenger side. He demanded that the defendant produce his operator’s license and vehicle registration. Davis also ordered the defendant to shut off the motor and get out of the automobile. The defendant is said to have replied “ I can’t, man ” or “I can’t.” Whereupon, Davis claims, the defendant leaned over and down toward the floor of his car, in Davis’ direction. As the defendant bent over toward the passenger side, Davis claimed that he reached inside the vehicle and pushed the defendant backwards into an upright position. At that instant, the policeman testified, the defendant grabbed him by the sleeve and drove the automobile off down the street, causing him to stumble in an effort to keep his balance. Davis testified that he shouted to the defendant “ Stop the car; stop the car!” as he was being dragged along. He claimed that the defendant said “No” and continued to drive the vehicle forward. Davis said that he then drew his service revolver and fired six shots. Several bullets struck the defendant and wounded him so severely that his lower limbs were permanently paralyzed. The policeman claimed that he then fell off the defendant’s moving automobile and was hurt. The defendant’s vehicle rounded a corner and came to a halt a short distance away. The police officer arrested the wounded man and removed him to a hospital. The defendant’s automobile was seized by the police and impounded.
The evidence adduced in this case does not support the results, i.e., two mutually exclusive verdicts. The defendant cannot be found innocent of assaulting the police officer, in the manner described by the prosecution’s witnesses, and then be found guilty of the self same crime. The proof might either sustain the view that the defendant grabbed the policeman by the sleeve and dragged him with his automoble or that he did not. As soon as the jury declared that the defendant was not guilty of such assault, in the second or third degree, the case was ended. A directed verdict of acquittal was then called for pursuant to section 410 of the Code of Criminal Procedure. The jury could not then simultaneously and logically find defendant guilty of the identical crimes which arose out of the *902 same single set of circumstances. When two verdicts are so inconsistent as to defy reason, they become incoherent, absurd.
In People v. Bullis (30 A D 2d 470, 472, supra) the court said: ‘ ‘ When the indictment charges two crimes, each of which has identical elements, a finding of guilty on one but not on the other is truly repugnant, as opposed to being merely inconsistent. ’ ’
Juries should not be permitted to render verdicts which are so inconsistent (People v. Munroe, 190 N. Y. 435, 438).
The principles announced in Dunn v. United States (284 U. S. 390, supra) vis-á-vis the validity of inconsistent verdicts, do not apply to this case. In Dunn the petitioner was indicted and tried on three counts involving the same intoxicating liquor, i.e. (1) maintaining a common nuisance by keeping intoxicating liquor for sale at a specific place, (2) unlawful possession of intoxicating liquor, and (3) unlawful sale of intoxicating liquor. The jury acquitted Dunn of the second count (possessing liquor); and third count (sale of liquor); and found bim guilty of the first count (keeping a place for the sale of liquor). It is self-evident that a person may commit several crimes by the same single act. (People v. Faden, 271 N. Y. 435; People v. Fennell, 10 A D 2d 78, 79.) When a thief •snatches a handbag from a woman’s arm he may commit several crimes at once: assault, larceny and robbery, all in the twinkling of the eye. In Dunn (p. 393) the incomparable Mr. Justice Holmes declared for the Supreme Court that “ Consistency in the verdict is not necessary.” Justice Holmes was then speaking about separate counts of an indictment charging different crimes which required different proofs of different elements. For Dunn could logically have been found guilty of maintaining a nuisance in his premises by permitting the sale of certain liquor and yet not be guilty of having possessed the said liquor himself. Someone else might have possessed the liquor and a third person might have sold it in Dunn’s place of business.
The dissenting opinion in Dunn v. United States (p. 399 et seq.) makes a clear distinction between inconsistent verdicts and repugnant verdicts. Inconsistent verdicts will not be disturbed by appellate courts, said Justice Butler, “Where the jury’s action reflects mere inconsistency in the consideration of the evidence which results in apparently illogical or unreasonable conclusions ”. However, where the jury’s verdict reflects repugnancy, the result “cut[s] a single and indivisible truth in two. * * * No judgment can rest on such a verdict and no court should receive it.” (Cf. People v. Piper, 50 Mich. *903 390, cited by Butler, J. in Dunn, supra, p. 400.) According to Justice Butler, repugnancy results when (p. 402): “One aticused in different counts of an indictment of the same crime, there being no difference in the means alleged to have been employed ’ ’. Then, such an accused ‘ ‘ may not be adjudged guilty on a verdict of conviction on one count and of acquittal on the other.” (See cases cited in Dunn v. United States, supra, p. 402.)
In People v. Sciascia (268 App. Div. 14, supra) the jury convicted the defendant of the crimes of robbery, attempted assault in the first degree and committing the crime while armed (Penal Law, § 1944). The jury disagreed on the crime of grand larceny. The Appellate Division (Second Dept.) found that the evidence “overwhelmingly established” the guilt of the defendant. The issue of consistency was not considered because the defendant did not take exception to the court’s charge and thus the “law of the case” was established (cf. People v. Pavlisak, 292 N. Y. 504, supra). Nevertheless, Mr. Justice Johnston dissented, for it was his view that the issue of consistency ought to have been considered by the appellate court, notwithstanding the fact that the defendant failed to take exception to the Trial Judge’s charge to the jury.
Where any necessary element of a crime is eliminated by a verdict of not guilty on one count, it becomes a question of law for the court to determine whether sufficient evidence remains to sustain a finding of guilt on another. In appraising the circumstances the court must exclude from consideration every fact found in favor of the defendant.
In Hohenadel Brewing Co. v. United States (295 F. 489, 490) the Third Circuit Court of Appeals by Davis, J. declared: “ [a] verdict of guilty * * * cannot stand in the face of [a] verdict of not guilty on * * * other counts ” where ‘ ‘ the jury has found as a fact that the company did not commit the acts therein charged. ’ ’
Judge Davis added that ‘ ‘ Facts that have no legal existence may not support a verdict. ’ ’
In Baldini v. United States (286 F. 133, 134) the Ninth Circuit Court by Boss, J., observed: “if two counts related, to the same transaction ’ ’ a verdict finding defendant guilty on one and not guilty on another became inconsistent and void.
In Gozner v. United States (9 F. 2d 603, 605) Judge Donahue, in a dissenting opinion, insisted that inconsistent verdicts cannot stand ‘ ‘ where the offenses charged in the counts upon which defendant has been acquitted are essential elements of the crime of which he has been convicted. ’ ’
*904 In Murphy v. United States (18 F. 2d 509) the Eighth Circuit reversed a conviction 1 ‘ for want of legal evidence to sustain it” and directed a new trial because one of the essential elements (sale of liquor) of the crime of which defendant was convicted had been eliminated by the jury’s verdict of not guilty on another count, and cited Rosenthal v. United, States (276 F. 714) with favor.
In Peru v. United States (4 F. 2d 881, 884) the Eighth Circuit Court of Appeals by -Kenyou, J. said: ‘1 The verdict as to * # * [a remaining] count must be supported by evidence other than the facts set out in * * * counts ” of which the defendant was acquitted. The court found ‘ ‘ no other evidence ” to support the guilty verdict.
These cases demonstrate that where any necessary element of a crime is eliminated by a verdict of not guilty on one count it becomes a question of law for the court to determine whether sufficient evidence remains to sustain a finding of guilt on another.
The defendant also contends that he became subject to double jeopardy for the same offense when the jury continued their deliberations after returning a verdict of not guilty of assault in the second and third degrees. Historically the protection of autrefois convict has applied to second or successive prosecutions of a defendant for the same crime in a given jurisdiction. However, this court sees no legal reason to deny a defendant the constitutional safeguard of a double jeopardy plea, in the same trial. Especially is this true if effect is given to the theory of ‘ ‘ elimination of elements of crimes by previous not guilty verdicts ”, exemplified in the Hohenadel Brewing Co., Baldini, Gonzer and Murphy cases (supra). Only a narrow construction of the statutes would lead a court to endorse the jury’s second and incompatible verdict of guilty in the same trial when a second trial would be barred on the ground of double jeopardy or res judicata.
In People v. Cignarale (110 N. Y. 23, 30, 31), the court observed that “ an acquittal or conviction by verdict of a jury, although not folloioed hy judgment or sentence * * * protects an accused person against another trial”. (Emphasis added.) That a defendant may not be twice placed in jeopardy for the same act was set forth in the landmark ease of Morey v. Commonwealth (108 Mass. 433, 434), in the following language : “ A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one *905 of them would have been sufficient to warrant a conviction upon the other. The test is■ not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense.” (Emphasis added.)
It is common practice for Grand Juries and District Attorneys to prepare indictments in alternative (and often redundant) counts. The purpose of doing so is apparently to prevent the possible escape of a suspected culprit on technical grounds or because of imprecise language. Although the defendant in this case was really accused of a single criminal episode (assault), the indictment charged him with two separate crimes of assault, i.e., assault in the second and assault in the third degrees. Because of such redundancy in draftsmanship, when the jury disposed of the second • degree count of assault and its lesser included charge of assault in the third degree, by verdicts of acquittal, the defendant was thereupon placed in jeopardy and ought not to have been further subjected to trial by the same jury for the same offense. Unless this be so, a defendant might be indicted and convicted on several counts of an indictment for a single crime by the simple device of setting forth the single crime in different counts of the indictment.
The rights of an accused may not be made to depend on the happenstance of draftsmanship (People v. Mussenden, 308 N. Y. 558, 561). In People v. Silverman (281 N. Y. 457) the court declared at page 462: “ In applying the constitutional safeguard against double jeopardy, this constitutional protection is not a mere matter of formal pleading * * *. A test is set up which considers evidence and not the theory of the pleader.”
In People v. McGrath (202 N Y. 445, 454-455) the Court of Appeals declared: “‘In the application of this constitutional principle, it is well settled that an acquittal or conviction by verdict of a jury, although not followed by judgment or sentence, is an acquittal or conviction which protects an accused person against another trial * * At common law a judgment was not necessary to support a plea of autrefois convict. This appears from the statement of Sir William Blackstone to the effect that the plea of a former conviction for the same identical crime is a good plea in bar, though no judgment was given or perhaps ever will be, as when suspended by the benefit of clergy or some other cause. (4 Blackst. Com. 330.) * * # In the words of Chief Justice Cooley, speaking of an accused person invoking a like objection: ‘ One trial and verdict * * * protect him against any subsequent accusation of the same *906 offense, whether the verdict be for or against him and whether the courts are satisfied with the verdict or not.’ (Cooley’s Const. Lim. [7th ed.] 466.) ” (Emphasis supplied.)
Since section 447 of the Code of Criminal Procedure requires that the jury verdict must be entered notwithstanding a mistake of law on its part, the defendant’s motion for a directed verdict must be denied. A new trial is ordered in which the aforementioned legal considerations may have greater efficacy than the law permits in this tribunal.